***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Following its review, the Full Commission affirms the Opinion and Award of the Deputy Commissioner, with certain modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The date of the injury which is the subject of this claim is January 19, 2007.
2. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
3. On all relevant dates, an employee-employer relationship existed between Plaintiff-Employee and Defendant-Employer.
4. On all relevant dates, Defendant-Employer employed three or more employees.
5. On all relevant dates, Defendant-Employer was insured by Zurich American Insurance Company with Broadspire acting as the third party administrator.
6. On all relevant dates, Plaintiff's average weekly wage was $516.70.
7. Defendants admitted the compensability of a claim for an injury to Plaintiff's right foot and paid permanent partial disability compensation for the rating to her right foot through an Industrial Commission Form 21 Agreement for Compensation.
 *********** EVIDENTIARY MATTERS
During the course of Plaintiff's deposition, Plaintiff's counsel's objected to counsel for Defendants' questions regarding Plaintiff's communications with her counsel of record. These objections are SUSTAINED and said testimony is STRICKEN from the record.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 59 years old. Plaintiff began her employment with Defendant-Employer in 2004. Prior to working for Defendant-Employer, Plaintiff worked at convenience stores and as a cafeteria manager.
2. On January 19, 2007, Plaintiff arrived at Defendant-Employer's facility in the morning and parked in the company parking lot. After exiting her vehicle, Plaintiff slipped on *Page 3 
ice and fell. She testified that she twisted an ankle and broke her foot in several places. Plaintiff also testified that she hit her head, neck, and shoulder on the bumper of her car.
3. Plaintiff testified that after her fall, she entered Defendant-Employer's facility and reported the incident to Defendant-Employer's environmental health and safety manager, Mr. Brian Neal. According to Plaintiff, she informed Mr. Neal that she had fallen and hurt both her feet, the left worse than the right, and that she hurt her neck and shoulder and hit her head.
4. Ms. Bonnie Caudle, Defendant-Employer's emergency medical response team member, prepared an incident report that notes only that Plaintiff sustained a left foot injury. Ms. Caudle transported Plaintiff to MedChoice for treatment. At the hearing before the Deputy Commissioner, Ms. Caudle testified that Plaintiff told her right after the accident that "her foot was hurting and she had also hit another car beside of her with her shoulder and head." Ms. Caudle testified that Mr. Neal was present at the time Plaintiff reported hitting her head and shoulder. Ms. Caudle also indicated that her attention was primarily focused on Plaintiff's foot at the time because it was swelling.
5. Plaintiff asserts that at MedChoice, she gave a detailed list of injuries to medical personnel. The records of Dr. Richard Lewis at MedChoice note that Plaintiff reported falling on her left foot, hip, and back. The examination focused primarily on Plaintiff's left foot. Dr. Lewis assessed a contusion to the dorsum of the left foot, provided an Ace bandage and crutches, and excused Plaintiff from work for the week following January 19, 2007.
6. On January 26, 2007, Plaintiff returned to MedChoice and reported having experienced pain in her right foot at the time of her fall that had worsened in the days thereafter. Examination revealed mild swelling in her right foot. Records also reflect that Plaintiff reported experiencing left hip and back pain. X-rays of Plaintiff's right foot were negative. Plaintiff was *Page 4 
diagnosed as having bilateral foot pain and given ACE bandages for both feet and special shoes to wear. She was released to return to work with restrictions to stay off her feet as much as possible, avoid squatting or climbing, and perform only occasional bending and overhead work.
7. Plaintiff subsequently returned to work for Defendant-Employer on or about January 30, 2007.
8. On January 31, 2007, Plaintiff presented to MedChoice with reports of pain and swelling in both feet, stating that she was unable to elevate her feet at work. Plaintiff was diagnosed with a left ankle and foot contusion with questionable ligament involvement. Plaintiff's left foot/ankle was placed in an air cast and her work restrictions were continued. An MRI was ordered and Plaintiff was referred to an orthopedic surgeon.
9. On February 7, 2007, Plaintiff presented to Dr. Gordon C. Kammire, an orthopedic surgeon. Plaintiff completed a medical questionnaire in which she noted that the examination was to be of her feet. An additional record from that date reflects that Plaintiff denied experiencing back problems. At his deposition, Dr. Kammire testified that it is his practice to treat only workers' compensation-approved injuries during workers' compensation-authorized examinations. Accordingly, if a patient complained of something beyond the accepted injury, he does not treat that condition and refers the patient back to their employer. Dr. Kammire diagnosed Plaintiff as having a left midfoot sprain and provided a fracture walker for ankle and foot support. Additionally, Plaintiff was instructed to remain on seated light duty work.
10. Plaintiff underwent an MRI of her left foot which revealed nondisplaced fractures involving the second through fourth metatarsals with associated marrow edema. On March 7, 2007, Dr. Kammire maintained Plaintiff's work restrictions of seated light duty. *Page 5 
11. Mr. Neal testified that he had reviewed each of Plaintiff's work restrictions notes and provided modified duty work for her in the office and later on the factory floor. Although the record and arguments of the parties reflect a dispute regarding the suitability of the work on the factory floor and whether Plaintiff voluntarily performed this work, the record reflects that Plaintiff continued to perform this work for Defendant-Employer.
12. Plaintiff filed an Industrial Commission Form 18 on April 3, 2007, indicating an injury to both feet, her left knee, and toes on her left foot.
13. Defendants accepted that a slip and fall injury by accident took place on January 19, 2007 through the filing of an Industrial Commission Form 60 on May 1, 2007. The Form 60 reflected that Plaintiff had injured her right foot.
14. On May 23, 2007, Dr. Kammire released Plaintiff to return to regular duty work and assigned a twenty-five percent (25%) permanent partial disability rating to her left foot. At deposition, Dr. Kammire clarified that due to the severity of the impairment to her left foot, Plaintiff would only be able to stand for an eight-hour day, and could only do so while wearing proper footwear and if she was allowed to take breaks as needed. Therefore, the Full Commission finds that Dr. Kammire did not actually release Plaintiff to full duty, regular work.
15. On May 31, 2007, Plaintiff was examined by Dr. Thomas Long, a family medicine specialist, at which time she reported experiencing neck pain among other health complaints. At his deposition, Dr. Long testified that his recollection is that Plaintiff related her neck pain to a motor vehicle accident in 1993. Dr. Long expressed no opinion with regard to the causation of Plaintiff's neck pain.
16. On July 26, 2007, Plaintiff presented to Dr. Mark Lyerly, at which time she reported a history of a fall in January 2007 that had exacerbated pre-existing neck pain. *Page 6 
On August 1, 2007, Dr. Lyerly performed a two-level cervical fusion. Plaintiff was removed from work on or before the date of surgery.
17. Plaintiff filed an Amended Form 18 on August 20, 2007, indicating that she also injured her neck in the fall on January 19, 2007.
18. Following the fusion surgery, Dr. Lyerly excused Plaintiff from work at regular intervals, with the last period being from November 1, 2007 to March 1, 2008. He ordered a functional capacity evaluation (FCE) on November 1, 2007, but Plaintiff has been unable to afford an FCE or return appointment with Dr. Lyerly.
19. Dr. Lyerly opined in his deposition testimony that if he were not able to see Plaintiff again but she did not require additional treatment, he would deem her to have reached maximum medical improvement and sustained a fifteen percent (15%) permanent partial disability rating to her back/neck.
20. Plaintiff testified that she was under the impression that she had been released to return to work by Dr. Lyerly with a five-to ten-pound lifting restriction. However, the medical records and expert testimony of Dr. Lyerly reflect his strong preference to obtain an FCE before assigning restrictions. The Full Commission finds that Dr. Lyerly has not yet released Plaintiff to return to work.
21. Dr. Lyerly opined that if the exacerbation of Plaintiff's cervical spine pain in January 2007 was linked to her admittedly compensable injury by accident, the fall at work accelerated or caused the need for her cervical surgery.
22. The parties have made several arguments and submitted contrasting testimony and evidence regarding Plaintiff's neck claim. Plaintiff contends that she consistently complained of injuring her neck in the January 19, 2007 slip and fall accident. Plaintiff further contends that *Page 7 
during the period when she needed treatment for her neck and she pursued the Form 21 regarding her foot, she was experiencing ongoing neck pain. Defendants contend that Plaintiff never reported a neck injury until July 2007. After reviewing the evidence of record thoroughly and considering the credibility of Plaintiff and the various witnesses, the Full Commission finds that Plaintiff did injure her neck as alleged when she slipped and fell at work on January 19, 2007.
23. Plaintiff's January 19, 2007 admittedly compensable injury by accident resulted in injuries to her left foot, right foot, left hip and her cervical spine.
24. Based upon the medical and other evidence of record, and as a result of her January 19, 2007 injury by accident and causally related conditions, Plaintiff has been unable to earn any wages in her former position with Defendant-Employer or in any other employment during the periods of January 19 to 29, 2007, and from August 1, 2007 through the present and continuing.
25. Like the Form 60 filed by Defendants, the Form 21 Agreement entered into by the parties to pay Plaintiff for her rating identified her injury as being to the right foot. Defendants' adjuster, Ms. Lauren Coggins, even testified that only the right foot injury was deemed compensable. However, as the other evidence of record establishes, Plaintiff's initial primary injury was to her left foot and the rating giving rise to the Form 21 was assigned to her left foot. The Full Commission finds that the Form 21 contained a clerical error with regard to which foot had been rated and was intended to pay Plaintiff for the rating to her left foot. Therefore, the Full Commission declines to interpret the Form 21 as approving payment to Plaintiff for a rating to the right foot when Plaintiff was never assigned such a rating.
26. The evidence of record indicated that Plaintiff has received some unemployment compensation, some employer-funded short and/or long term disability benefits, and possibly a *Page 8 
brief period of salary continuation since August 1, 2007. The evidence was insufficient for the Full Commission to determine the exact amounts and periods involved.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 19, 2007, Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with Defendant-Employer which resulted in injuries to her left foot, right foot, left hip and her cervical spine. N.C. Gen. Stat. § 97-2(6).
2. As a result of her January 19, 2007 injury by accident and casually related conditions, Plaintiff is entitled to have Defendants pay to her ongoing total disability compensation at the rate of $344.47 per week for the periods of January 19 to 29, 2007, and from August 1, 2007 through the present and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
3. As the result of her January 19, 2007 injury by accident and causally related conditions, Plaintiff is entitled to have Defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with the treatment provided by Dr. Kammire and Dr. Lyerly, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. § 97-25.
4. Plaintiff has been compensated for the 25% permanent partial disability rating to her left foot via the Form 21 approved by the Commission and is not entitled to additional compensation therefor. N.C. Gen. Stat. § 97-31. *Page 9 
5. Defendants are entitled to a credit for any unemployment or employer-funded salary continuation or disability benefits Plaintiff received on or after August 1, 2007.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff ongoing total disability compensation at the rate of $344.47 per week for the periods of January 19 to 29, 2007 and from August 1, 2007 through the present and continuing until further Order of the Commission. Accrued compensation shall be paid to Plaintiff in a lump sum. This compensation is subject to a credit for any unemployment or employer-funded salary continuation or disability benefits Plaintiff received on or after August 1, 2007. Should the parties be unable to determine the amount of the credit, they may file a Form 33 to request a hearing on the matter.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by Plaintiff as the result of her January 19, 2007 injury by accident and causally related conditions, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with the treatment provided by Dr. Kammire and Dr. Lyerly, when the medical bills have been approved according to established Industrial Commission procedures.
3. Defendants shall promptly authorize and schedule the functional capacity evaluation requested by Dr. Lyerly, as well as a return appointment for Plaintiff with Dr. Lyerly for evaluation of her current condition and review of the FCE results.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for Plaintiff. From the compensation having accrued, *Page 10 
this fee shall be deducted from the amounts due Plaintiff and paid directly to counsel for Plaintiff, with counsel for Plaintiff receiving every fourth check thereafter.
5. Defendant shall pay the costs.
This the __ day of June 2009.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DANNY L. McDONALD COMMISSIONER